JULIA R. HOUGHLAND, petitioner,

*v.*

GLEN S. HOUGHLAND, defendant.

[Decided June 24th, 1941.]

*Messrs. Osborne, Cornish & Scheck* (*Mr. Harry V. Osborne, Jr.,* appearing), for the defendant.

*Mr. John J. Deeney,* for the petitioner.

HERR, A. M.

This is an application by a divorced husband for an order directing his former wife to return to him the sum of $450 which he paid to her as alimony after her remarriage.

The final decree of this court divorcing the petitioner and the defendant was entered on July 17th, 1940. Prior thereto, on April 11th, 1940, an order had been entered directing Mr. Houghland to pay his wife the sum of $150 per month as and for her support and maintenance. On June 10th, 1941, an order was entered vacating the provision for the payment of alimony contained in the order of April 11th, 1940, for the reason that Mrs. Houghland had remarried on March 1st, 1941.

The proof presented on the return day of the order to show cause why the alimony provision should not be vacated revealed that Mrs. Houghland had not informed her former husband of her remarriage, that he did not learn of such

remarriage until late in May, 1941, and that Mrs. Houghland (now Mrs. Freeman) continued for three months after her remarriage to accept from him the sum of $150 per month which he sent to her attorney as her alimony pursuant to the order of April 11th, 1940. The order of June 10th, 1941, provided that Mr. Houghland might apply for the relief now sought.

The situation is governed by *R. S. 2:50-38; N. J. S. A. 2:50-38.* Prior to the passage of this act in 1933, the rule was that the remarriage of a divorced wife did not, *ipso facto,* terminate the duty of her former husband to pay alimony. *Cropsey* v. *Cropsey, 104 N. J. Eq. 187, 190; 144 Atl. Rep. 621.*

The statute reads as follows:

"If after the decree of divorce the wife shall remarry, the court of chancery shall not make any order touching the alimony of such wife except that the court of chancery, upon application of the former husband, on notice and upon proof of the marriage of the former wife after the decree of divorce, must modify any order or decree touching the alimony of the former wife by vacating and annulling any and all provisions in any such order or decree, or both, directing the payment of money for the support of the former wife."

Shortly after the passage of this act, in the unreported case of *Hauenstein* v. *Hauenstein* (Docket 57, page 92), the late Advisory Master Child said:

"The purpose of the legislature in passing this law is plain, it was to avoid the effect of the decisions in the cases of *Warren* v. *Warren, 92 N. J. Eq. 334; Dietrick* v. *Dietrick, 99 N. J. Eq. 711; Cropsey* v. *Cropsey, 104 N. J. Eq. 187,* which cases held that the remarriage of the divorced wife did not, of itself, terminate her right to alimony.

"The act of 1933 is perfectly clear. It prohibits an allowance to a divorced wife who remarries and if the allowance has been made, makes it mandatory upon this court to vacate any provision for alimony. * * *"

The only reported cases interpreting our statute are *Suozzo* v. *Suozzo (1938), 16 N. J. Mis. R. 475; 1 Atl. Rep. (2d) 930,* and *Corbin* v. *Mathews (1941), 129 N. J. Eq. 549; 19 Atl. Rep. (2d) 633.*

In the *Suozzo Case* the petitioner made an application to hold her former husband in contempt for failure to pay permanent alimony, and the defendant countered with a petition to vacate the order for alimony alleging the petitioner's remarriage. . The petitioner objected to the defendant's counter application being heard until he had fully satisfied the arrears under the alimony order. It was held that the objection was without merit (although the defendant failed to establish the petitioner's remarriage). Advisory Master Rogers said in his opinion in that case (at *p. 476*):

"* * * It has been held under our statute (*R. S. 2:50-38*) that remarriage of a former wife after her decree for divorce *ipso facto* terminates her right to further payments under her order therefor in that on application of the former husband the court must vacate such order and hold it ineffectual from the date of remarriage. *Hauenstein* v. *Hauenstein* (Docket 57, page 92); *Rothenberg* v. *Rothenberg* (Docket 78, page 621)."

In the *Corbin Case* the bill of complaint recited a separation agreement and referred to the complainant's subsequent Nevada divorce and remarriage. On the complainant's motion to strike the defendant's answer and counter-claim, it appeared from the *ex parte* affidavits that the defendant did not know until about July, 1939, that the complainant had remarried in December, 1937. The decree of this court directed the defendant to pay the accrued arrearages under the separation agreement, the defendant having ceased to make the agreed payments in July, 1939. The Court of Errors and Appeals held that the maintenance agreement became merged in the Nevada divorce decree and took on the aspect of alimony. In reversing the decree of this court, the Court of Errors and Appeals said (per Case, J., pages 554-5):

"* * * We do not know what the Nevada courts would determine if application should be made by the defendant for a modification of the alimony decree in view of the wife's remarriage; and it is quite unnecessary for us to dwell on that subject inasmuch as this is not a suit for enforcement of the decree. But the course of our Chancery Court on a like procedure is charted by the following statutory direction (*R. S. 2:50-38*): * * * (quoting the statute)."

The legislature of the State of New York some years ago passed a statute similar to our own. That statute (section 1159 of the New York Civil Practice Act) reads as follows:

"Where an action for divorce is brought by a husband or wife, and a final judgment of divorce has been rendered in favor of the wife, the court, by order upon application of the husband on notice, and on proof of the marriage of the wife after such final judgment, must modify such final judgment and any orders made with respect thereto by annulling the provisions of such final judgment or orders, or of both, directing payments of money for the support of the wife. (Am'd. L. 1934, ch. 220, in effect Sept. 1.)"

In the case of *Linton* v. *Hall* (*N. Y. Supreme Court, 1914*), *86 Misc. Rep. 560; 149 N. Y. Supp. 385,* there was an application for the modification of a judgment for alimony upon the ground that the wife had remarried three months after the entry of the final decree of divorce, although the husband had no knowledge of the remarriage for almost six years thereafter. The statute was then substantially the same as it is at present and the question was whether the plaintiff was entitled to alimony until the date of the order annulling the alimony provision of the judgment, or only until her remarriage. The court held that the intent and purpose of the statute was that the plaintiff was not entitled to alimony subsequent to her remarriage. The opinion (per Aspinwall, J., *149 N. Y. Supp. pp. 386-7*) stated:

"If the defendant can only be relieved from the payment of alimony from the time of the entry of the order annulling the provision, the defendant, under the situation existing in this case, not having notice of his former wife's remarriage until many years thereafter, it would in effect mean that a woman could, by contracting a secret marriage, or by remarrying in a remote or foreign jurisdiction, and the former husband not having knowledge of such remarriage for a long period of time, as in the case at bar for a period of almost six years, mulct him in a large sum of money by reason of alimony having been paid, or having accrued, as herein, and she would, therefore, while being supported by her present husband, also be in receipt of moneys from her former husband, or, in other words, the former husband, under such conditions, would be

assisting in the support, 'either in whole or in part,' of the said plaintiff after her marriage to another, a situation which I am convinced, the statute was enacted to prevent."

In *Dumproff* v. *Dumproff* (*1930*), *138 Misc. Rep. 298; 244 N. Y. Supp. 597*, the New York Supreme Court again interpreted the statute, as follows (per Dunne, J., *244 N. Y. Supp. 598-599*):

"'* * * The purpose of the section [section 1159, Civil Practice Act] is to prevent a woman who had married, after obtaining a divorce, from being supported wholly or in part by her former husband. * * *

"'* * * Upon her remarriage I hold that *eo instanti* the obligation to compel provision for her maintenance is shifted from the shoulders of her former spouse to him who assumes all the privileges, and therefore is ordinately a full measure of the duties incident to the marital state. This is as it should be. For otherwise, in a. possible case *ad interim* the time of such remarriage and the application by the former husband for a modification of the final decree, the alimony paid by such former husband would not only lighten the duty of the second spouse in respect to the support of his wife, but might even be reflected, if the wife were a mere conduit, in the enhanced financial circumstances of such second husband. There could be no justice in such proposition.

"The court holds, therefore, that the plaintiff is not entitled to alimony subsequently to her remarriage. * * *'"

And in *Kirkbride* v. *Van Note, 275 N. Y. 244; 9 N. E. Rep. (2d) 852; 112 A. L. R. 243,* Judge Finch, of the New York Court of Appeals, said (*9 N. E. Rep. (2d) 854; 112 A. L. R. 245*):

"The provision of the Civil Practice Act is mandatory. Where a former wife has remarried and an application is made for modification of the judgment with respect to the direction of payment of money for the support of the former wife, the court 'must modify,' and cannot in its discretion refuse to do so. Alimony is awarded for present maintenance, and 'as a matter of public policy a wife who has a husband with whom she is living should be supported by him and not by one from whom she has been divorced.' *Schley* v. *Andrews,*

*225 N. Y. 110, 114; 121 N. E. Rep. 812, 813.* The law recognizes the unfairness of requiring a husband to pay alimony for a period during which his former wife is married to another. * * * The modification is not limited to the time subsequent to the application. It applies *nunc pro tunc* as of the time of the remarriage to all unpaid alimony. To hold otherwise would enable a woman to conceal her remarriage and thereby obtain alimony from her former husband while she is living with a new spouse.

"The case of *Cary* v. *Cary, 217 N. Y. 670; 112 N. E. Rep. 1055,* is cited to us as supporting the contention of the plaintiff that the modification can apply only to alimony accruing subsequent to the application. That case was affirmed by a divided court. To the extent that the affirmance of the determination of the lower courts in that case may conflict with the conclusions we have reached herein, that case must be deemed overruled."

It is my judgment, especially in the light of these analogous decisions, that under our statute the remarriage of a divorced wife *ipso facto* terminates her right to alimony and that an order providing for the payment of alimony becomes ineffectual at that time. "On application of the former husband the court must vacate such order and hold it ineffectual from the date of remarriage." (*Suozzo* v. *Suozzo, supra.*) Since Mrs. Houghland's right to alimony and Mr. Houghland's duty to provide it both terminated on March 1st, 1941, the order of June 10th, 1941, was effective as of the former date, *nunc pro tunc.*

In continuing to accept alimony from her former husband, Mrs. Houghland violated the provisions of the statute. The reason for her failure to disclose her remarriage to him was, obviously, her desire to continue to receive $150 per month, notwithstanding the fact that her acceptance thereof constituted a fraud upon her former husband. Having successfully concealed her remarriage for three months she defrauded Mr. Houghland and became herself unjustly enriched in the sum of $450, which Mr. Houghland now seeks to recover.

Mrs. Houghland (now Mrs. Freeman) contends that the court does not have power to order the return of money paid

under the alimony order because the statute provides that the court "shall not make any order touching the alimony of such wife except" that it must vacate (as it already has vacated) all alimony provisions in any existing order or decree. This argument is in my judgment specious and untenable. In the first place, the relief sought is not an "order touching the alimony." Although the $450 of which Mr. Houghland was defrauded was paid by him under the mistaken belief that he was paying alimony, it was not, in fact, alimony. Mrs. Houghland's right to alimony having terminated upon her' remar-. riage, the payments made by Mr. Houghland after that time, even though paid *as* alimony, were not of such nature.

Furthermore, the obvious purpose of the statute is not to prevent the court from ordering the return of alimony paid after the remarriage of a' divorced wife under the circumstances presented in this case. In my judgment, the intent of the statute is to prevent a wife who has remarried from securing arrearages of alimony and to preclude her from seeking to hold her former husband in contempt for nonpayment thereof. It was designed to change the earlier rule that a divorced wife's remarriage was simply a fact to be conside.ed in an application for the *reduction* of alimony. It directs the court to vacate entirely the provision of any earlier order for the payment of alimony.

The contention that the statute, because of its peculiar wording, prohibits this court from ordering the return of money paid as alimony to a divorced wife after her remarriage (concealed from her former husband or not known to him) would in effect nullify the purpose of the statute, put a premium upon fraud and deceit, and enable a woman to mulct her former husband in violation of the statute. Where, as here, a woman is guilty of imposition or fraud in securing moneys in the guise of alimony, she will be ordered to repay it. *Gorrell* v. *Gorrell, 2 N. J. Mis. R. 707.* See *Wittlinger* v. *Wittlinger, 13 N. J. Mis. R. 349; 178 All. Rep. 97; Cropsey* v. *Cropsey, supra; Hollingshead* v. *Hollingshead, 91 N. J. Eq. 261, 279; 110 All. Rep. 19.*

For the above reasons an order will be advised that the petitioner repay to the defendant the sum of $450, in accordance with the prayer of his petition.