ANTHONY J. KELLER vs. HELEN M. O'BRIEN.

Worcester. May 5, 1997. - August 21, 1997.

Present (Sitting at Springfield): WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, GREANEY, FRIED, & MARSHALL, JJ.

*Divorce and Separation,* Alimony, Modification of judgment. *Restitution.*

In a postjudgment divorce proceeding in which a Probate Court judge had terminated the husband's alimony on the basis that the wife's remarriage constituted a change in circumstances justifying such a modification, the husband was not entitled to restitution of alimony payments made to the wife after her remarriage where it would be inequitable in the circumstances; the court determined that the rule announced in *Keller* v. *O'Brien,* 420 Mass. 820 (1995), would not be applied retroactively to this case. [778-785] LYNCH, J., dissenting.

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on March 29, 1988.

Following review by this court, 420 Mass. 820 (1995), further proceedings were had before *Arline S. Rotman,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Seymour Weinstein (Barbara S. Liftman* with him) for the plaintiff.

*Craig T. Ornell* for the defendant.

MARSHALL, J. Anthony J. Keller appeals from a judgment of the Worcester Probate and Family Court, entered after rescript from this court, *Keller* v. *O'Brien,* 420 Mass. 820 (1995) (*Keller I*), that terminated Keller's alimony obligation to his former wife, Helen M. O'Brien, but denied Keller's request for restitution of alimony payments made to O'Brien after her remarriage. Keller had sought restitution for all payments made after June, 1992, the date that he first applied to modify his alimony obligation. We transferred the case to this court on our own motion and conclude that, in the circumstances of this case, the judge was correct. We affirm the judgment of the Probate and Family Court.

## I

After twenty-six years of marriage, Keller and O'Brien were divorced in November, 1990. The judgment of divorce nisi required Keller to pay O'Brien $800 a week, $500 of which was alimony.[1] The judgment was silent as to whether alimony would terminate in the event of O'Brien's remarriage, and there was no surviving agreement between the parties.[2]

O'Brien remarried on May 17, 1992. One month later, on June 17, 1992, Keller filed a complaint for modification pursuant to G. L. c. 208, § 37, seeking to terminate alimony, claiming that O'Brien's remarriage constituted a material change of circumstances. He filed an amended complaint in November, 1992, making the same claim. After an evidentiary hearing in December, 1993, a probate judge concluded that O'Brien's remarriage was a change in circumstances allowing for the introduction of evidence relative to the need for continued support, citing *Southworth* v. *Treadwell*, 168 Mass. 511 (1897). She determined, however, that O'Brien was still in need of support, that Keller was still able to pay support, and that O'Brien's remarriage did not constitute a material change in her economic circumstances sufficient to warrant a modification of the divorce judgment.[3] Accordingly, on February 15, 1994, the judge issued

---

[1]Other obligations imposed on Keller by the divorce judgment are not at issue in this appeal.

[2]Had the divorce decree, or a surviving separation agreement, provided for termination of alimony in the event of O'Brien's remarriage, the court would have afforded due consideration to the parties' intent. *Surabian* v. *Surabian*, 362 Mass. 342 (1972).

[3]The judge described the Keller marriage as "a traditional long term marriage in which the wife was the homemaker and the husband was the breadwinner." She incorporated the findings of the divorce trial judge "that the wife would be unable to support herself as a result of her lack of education, employable skills and her age." The judge further found that at the time of the modification hearing (three years after the divorce) Keller's income as a bank executive had increased to $180,000, and that the value of his assets had also appreciated markedly. His 50% share of his 401K retirement plan, valued at the time of divorce at $56,681, had a present value of $284,294. His 50% share of his pension, worth $44,000 at the time of divorce, had a present worth of $160,000; and his stock options that were of "no value" at the time of the divorce were now worth $717,757. O'Brien's financial circumstances, in contrast, had deteriorated since her divorce. The judge found that O'Brien had returned to work and that in light of her limited training and experience was able to earn only $90 each week as a medical assistant. The judge also found O'Brien's second husband was able to contribute insufficiently to

a judgment dismissing Keller's complaint. Keller appealed, and we granted his application for direct appellate review.

On July 24, 1995, we issued our opinion, *Keller I*, holding that, in the absence of an agreement to the contrary, remarriage is a prima facie change of circumstances, and concluding for the first time that remarriage terminates alimony "absent proof of some extraordinary circumstances, established by the recipient spouse, warranting its continuation." *Id.* at 827. We declined to establish a rule that remarriage automatically terminates alimony, but described the "general principle that alimony should terminate on the recipient spouse's remarriage," and that "alimony would survive remarriage only in those rare situations which involve an on-going and legitimate need for continuation of alimony payments." *Id.* Noting that it was not apparent from the record that O'Brien had satisfied her burden of showing the "extraordinary" circumstances that would warrant continuation of the alimony payments, we vacated the Probate Court's dismissal of Keller's complaint for modification and remanded the matter to the Probate Court.[4] Keller then moved for entry of judgment and, for the first time, sought restitution of alimony payments made after the date on which he filed his original complaint for modification, June 9, 1992.[5] On August 29, 1995, after a further hearing, the probate judge terminated Keller's alimony obligation but denied his claim for restitution.

## II

*Keller I* resolved an issue that had been unsettled in Massachusetts for more than a century. Previously we had recognized that remarriage was a change of circumstances al-

O'Brien's financial security; he earned $28,000 a year, $7,800 of which he was required to pay for child support. See *Keller v. O'Brien*, 420 Mass. 820, 821-822 (1995) (*Keller I*).

[4]We do not agree with Keller that we "found" that O'Brien had not satisfied her burden. Had we done so, we would have ordered that the judge enter a decree terminating Keller's alimony obligation.

[5]Keller claims that he paid $78,600 in alimony to O'Brien between the time of the filing of his complaint for modification (June, 1992) and the termination of his alimony obligation (August, 1995), and that he paid $35,000 of this amount after the complaint initially was dismissed by the probate judge in February, 1994, while the matter was pending on appeal. O'Brien does not dispute these amounts. Keller seeks restitution of $78,600 or, in the alternative, the amount of alimony he paid from the date of the *hearing* on his complaint (December 29, 1993), an amount that he does not specify.

lowing one "a right to look for support from the new spouse," *O'Brien* v. *O'Brien*, 416 Mass. 477, 481 (1993), and that "either party could offer evidence" as to whether the continuation of alimony to the remarried spouse was warranted. *Southworth, supra* at 512.

Our decision in *Southworth* suggested, but did not state, that the recipient spouse had the burden of proving that continued alimony after remarriage was warranted. *Id.* at 513. However, in the one hundred years since *Southworth*, our courts have required the party seeking modification, the alimony-paying spouse, to meet the burden of proving that upon remarriage a change of financial circumstances has occurred sufficient to justify modification of the alimony obligation. See, e.g., *Ziegler* v. *McKinlay*, 318 Mass. 765, 767 (1945) (upholding finding that judge not "satisfied on the evidence that the [support-paying spouse] had sustained the burden of proving that such a change in [his] circumstances had occurred since the entry of the [divorce] decree as would justify the modification")[6]; *Gallerani* v. *Gallerani*, 24 Mass. App. Ct. 927, 928 n.5 (1987) (in the absence of an agreement, remarriage does not terminate alimony where the "husband makes no argument that he is unable to pay the alimony called for in the agreement"). See also *Gottsegen* v. *Gottsegen*, 397 Mass. 617, 625 (1986) ("the court may later modify the original judgment if the petitioner demonstrates a material change of circumstances").[7]

Our decision in *Keller I* changed this standard in two important respects. First, we held that, in the event of remarriage, the burden of proof rests squarely on the recipient spouse to justify the continuation of alimony. *Id.* at 826-827. In addi-

---

[6]In *Ziegler* v. *McKinlay*, 318 Mass. 765, 767 (1945), we also reiterated our rule: "That the [support-recipient spouse] has remarried is not a controlling circumstance."

[7]Stated differently, at the time Keller sought modification of his alimony obligation to O'Brien, probate judges had treated those cases in which a spouse sought to terminate alimony obligations because of the recipient spouse's remarriage as similar to other cases in which a party sought to modify the alimony obligations: the party seeking the modification had the burden of proving a material change of circumstances sufficient to warrant the requested relief. See *Robbins* v. *Robbins*, 343 Mass. 247, 249 (1961), citing *Southworth* v. *Treadwell*, 168 Mass. 511 (1897) ("no modification can be made unless the petitioner shows a change of circumstances since the entry of the earlier decree"); *Schuler* v. *Schuler*, 382 Mass. 366, 368-369 (1981) (modification of alimony sought by husband because of reduction in income); *Pemberton* v. *Pemberton*, 9 Mass. App. Ct. 9, 13 (1980), and cases cited.

tion, we increased significantly the weight of this burden: the recipient spouse now must prove that "extraordinary" circumstances warrant the continuation of alimony. *Id.* We said that we would not "speculate" about what circumstances might be sufficiently "extraordinary" to warrant the continuation of alimony after remarriage, but our opinion spoke of these as "rare situations," making clear that the burden is indeed a heavy one. *Keller I, supra* at 827 & n.13.

## III

Restitution is an equitable remedy by which a person who has been unjustly enriched at the expense of another is required to repay the injured party. *Salamon* v. *Terra,* 394 Mass. 857, 859 (1985), quoting Restatement of Restitution § 1 (1937). *Jones* v. *Swift,* 300 Mass. 177, 185 (1938). The fact that a person has benefited from another "is not of itself sufficient to require the other to make restitution therefor." Restatement of Restitution, *supra* at § 1 comment c. Restitution is appropriate "only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [her] to retain it." *Id.*[8] See *National Shawmut Bank* v. *Fidelity Mut. Life Ins. Co.,* 318 Mass. 142, 146 (1945). Applying these principles, we must decide whether, as between O'Brien and Keller, it is unjust for O'Brien to retain any of the alimony payments that she received after her remarriage in May, 1992. Because we have never addressed the issue — as far as we can discern the question of restitution of alimony payments made prior to the modification of a divorce decree has not arisen[9] — we consider first how the relevant principles of restitution have been applied generally in Massachusetts.

We have awarded restitution on a number of occasions, but in circumstances that we conclude are not applicable to Keller's

---

[8]"One essential element of relief for unjust enrichment is of course the enrichment of the defendant. But this alone does not suffice since the defendant will be deprived of the enrichment only if its retention is regarded as unjust." 1 G. Palmer, Restitution § 1.7, at 41 (1978).

[9]In *Heistand* v. *Heistand,* 384 Mass. 20, 23 (1981), the husband made a claim of "credit for overpayment of alimony." In that case the parties had agreed that alimony would terminate upon the remarriage of the wife. Prior to the divorce judgment becoming final, the wife had a "ceremonial exchange of vows" with a man whom she later married. The only issue concerned payments made to the former wife before her legal remarriage, *id.* at 22, 24, an issue not relevant here.

claim made here. We have, for example, awarded restitution in those cases where a party has been unjustly enriched because of the breach of some duty, a violation of trust, bad faith, or fraud.[10] There is no claim here of any bad faith or fraudulent conduct by O'Brien. We are aware of instances in which restitution has been awarded by courts in other States where such conduct on the part of the alimony-recipient spouse has been proven: in each such case a statute or judicial rule plainly provided that alimony would terminate upon remarriage, and in each case the recipient spouse sought to conceal her marriage from her former husband.[11] No such rule existed in Massachusetts, and O'Brien never sought to conceal her remarriage from Keller. See *Schneider* v. *Schneider*, 204 Misc. 918, 919 (N.Y. Sup. Ct. 1953) ("reasons for which restitution is generally directed do not apply either to temporary or permanent alimony").[12]

[10]See, e.g., *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 556 (1997), and cases cited; for disputes involving real or constructive trusts, see, e.g., *Barshak* v. *Buccheri*, 406 Mass. 187, 193 (1989); and in actions for "business torts" such as unfair competition and trade name, trademark, and copyright infringement, see, e.g., *National Merchandising Corp.* v. *Leyden*, 370 Mass. 425, 431-432 (1976). Specific restitution also is recognized as the traditional remedy where a party has been deprived of land through fraud, see, e.g., *State St. Bank & Trust Co.* v. *Beale*, 353 Mass. 103, 105 (1967).

[11]See *Jacobson* v. *Jacobson*, 177 Wis. 2d 539 (Ct. App. 1993) (where statute provided for termination of alimony upon remarriage, husband may be entitled to repayment of alimony paid after wife's remarriage if wife kept remarriage a secret; remanded to lower court to determine facts and equities of case); *Houghland* v. *Houghland*, 19 N.J. Misc. 474 (1941) (where statute is "perfectly clear" that allowance of alimony to divorced wife who remarries is prohibited, and any provision for such alimony must be vacated, divorced wife who had concealed remarriage from her former husband during which she had continued to accept alimony was guilty of fraud and thus unjustly enriched). See also *Simmons* v. *Simmons*, 346 So. 2d 550 (Fla. Dist. Ct. App. 1976) (affirming lower court's order requiring wife to refund alimony paid to her after her secret common-law remarriage).

[12]We have also recognized restitution as a possible remedy in disputes arising from contractual relations of a quasi or implied nature. For example, we have recognized that a quasi contract, i.e., "an obligation created by law 'for reasons of justice without any expression of assent and sometimes even against a clear expression of dissent,' " may form the basis of recovery under a theory of restitution. *Salamon* v. *Terra*, 394 Mass. 857, 859 (1985), quoting 1 A. Corbin, Contracts § 19 (1963). We have also said that restitution may act as a remedy when "[i]n the absence of an express agreement, a contract implied in fact may be found to exist from the conduct and relations of the parties." *LiDonni, Inc.* v. *Hart*, 355 Mass. 580, 583 (1969). In cases where a defendant breaches a contract, the plaintiff may recover in restitution the value

Keller's most pointed argument for restitution is his claim that the initial judgment of the Probate Court dismissing his complaint to modify the divorce judgment was an error of law, and that after rescript the judge did not decide the issue "with an appropriate view of the law to be applied." He claims that he should be put in the position that we "intended him to be in following his former wife's remarriage." We conclude that the judge below did not misinterpret our decision in *Keller I*; contrary to Keller's claim, we neither addressed the issue of restitution, nor did we direct the probate judge to do so. On our review of the entire record we determine that the equities do not support his claim for restitution.

First, it was not until after our decision in *Keller I* that Keller made any claim for restitution. His initial complaint for modification (June, 1992) and his amended complaint for modification (November, 1992) sought only relief from paying alimony (no mention is made of restitution), even though by November he had made at least six months of alimony payments to his former wife since her remarriage. At the evidentiary hearing on his complaint (December, 1993), Keller never raised the issue, although by then he had made alimony payments for at least eighteen months after the remarriage. Not surprisingly, in her lengthy findings of fact and rulings of law supporting the dismissal of the complaint, the judge made no mention of restitution.[13] After entry of judgment and pending appeal, Keller filed no motion to stay, nor did he otherwise attempt to relieve himself of alimony payments pending his appeal. On appeal from the judgment of dismissal Keller made no reference to or any claim for restitution; accordingly, we did not address the matter. In short, prior to July, 1995, O'Brien had no notice that Keller would seek to recover from her any of the alimony payments that he had made. Keller's three-year delay deprived O'Brien of any opportunity to anticipate any such

of the services rendered; "[r]ecovery under this theory is derived from the principles of equity and fairness and is allowed where there is substantial performance but not full completion of the contract." *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 793 (1986). See *Kass* v. *Todd*, 362 Mass. 169, 175 (1972), and cases cited. But our holdings in these kinds of disputes are also not applicable. A spouse's duty to pay alimony does not arise from contract, but rather from the status of the parties, *Goldman* v. *Rodrigues*, 370 Mass. 435, 437 (1976), and cases cited.

[13]The judge correctly noted that the "sole" question on Keller's complaint for modification was the "continuation of alimony."

order, and deprived her of any meaningful opportunity to adjust her standard of living in anticipation of any income reduction. In these circumstances, the equities do not favor Keller.[14]

Second, O'Brien had no reason to anticipate that her alimony payments were, as a matter of law, at risk, either before the judgment of dismissal or while her former husband took an appeal from that judgment. While we have not done so, some courts have ordered restitution where a judgment has been reversed after a party has been ordered by a court to make payment to another, and the judgment has been paid. See Restatement of Restitution § 74 (1937) ("[a] person who has conferred a benefit upon another in compliance with a judgment . . . is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable . . ."). Our decision in *Keller I* announced a new rule.[15] Because O'Brien had no reason to anticipate that the burden would shift to her to prove "extraordinary" circumstances justifying the continuation of alimony,[16] she could not have anticipated that her remarriage "should serve as an election between the support provided by

---

[14]Contrast *Robbins* v. *Robbins*, 343 Mass. 247, 252 (1961), where we noted that where a remarriage had been annulled and alimony reinstated, the remarrying spouse might not be entitled to obtain alimony under the "relation-back" principle for the period prior to annulment "where there had been a change of position by the husband in reliance on the later marriage." In this case, because the parties did not agree that alimony would terminate on O'Brien's remarriage, absent notice from Keller, O'Brien reasonably could have relied on the continuation of alimony payments to support her standard of living, especially where, as here, the judge found that those payments were necessary for her support.

[15]In his brief in *Keller I*, Keller recognized as much, arguing that "the law in the Commonwealth as to the effect of remarriage on the alimony obligation is unclear to practitioners and judges alike."

[16]In the period between her remarriage and our decision in *Keller I*, O'Brien could not have known that we would change the law that had been applied for almost a century. In *Surabian* v. *Surabian*, 362 Mass. 342, 349 n.8 (1972), we said that, "[i]n view of the changes in the status of women, we may, if the occasion presents itself, be required to reconsider the rule of *Robbins* v. *Robbins*, 343 Mass. 247 [1961] [no automatic termination of alimony payment], even in cases where the intent of the parties and the court do not so clearly indicate." In the twenty-three years between *Surabian* and *Keller I*, we had not reconsidered the *Robbins* rule, and we do not believe that any party reasonably could have anticipated that a new rule was imminent. In *O'Brien* v. *O'Brien*, 416 Mass. 477, 481 (1993), decided *after* the wife's remarriage in this case, we noted that "[t]his court has not recently visited the general question of the automatic termination of alimony upon the remarriage of a spouse who has been receiving alimony." We still did not act on that question, and

the alimony award and the legal obligation of support embodied in the new marital relationship." *Keller I, supra* at 828, quoting *Voyles* v. *Voyles*, 644 P.2d 847, 849 (Alaska 1982).[17] For these reasons we also believe it would be inequitable to grant the relief that Keller seeks, notwithstanding our vacation of the earlier judgment. In the circumstances of this case we determine that it is more appropriate that the new rule we announced in *Keller I*, and the practical effect of that rule on the litigating parties, be applied prospectively.

In determining whether a new rule arising from decisional law should apply prospectively, we look at three factors: (1) whether a new principle has been established whose resolution was not clearly foreshadowed; (2) whether retroactive application will further the rule; and (3) whether inequitable results, or injustice or hardships, will be avoided by a holding of nonretroactivity. *McIntyre* v. *Associates Fin. Servs. Co. Mass.*, 367 Mass. 708, 712 (1975), citing *Chevron Oil Co.* v. *Huson*, 404 U.S. 97, 106-107 (1971). On the facts of this case, the test favors O'Brien.

We have already addressed the first factor. See notes 15, 16, and 17, *supra*, and accompanying text. We conclude, as well, that the retroactive application of our new rule to the parties in this case will not further the rule, and Keller has made no such claim. Finally, we have reviewed the record and conclude that what would be, in effect, a retrospective application of the *Keller I* rule to these parties would inflict an unfair financial hardship on O'Brien; in her case "restitution would be inequitable." Restatement of Restitution § 74 (1937).[18] The record fully supports the earlier findings of the judge that, even after her remarriage, and

we certainly gave no hint that we would order restitution of alimony payments made after remarriage and before entry of a decree modifying a divorce judgment.

[17]We held in *O'Brien* v. *O'Brien*, 325 Mass. 573, 578 (1950), that a payor spouse could not reduce his alimony payments on his claim for financial hardship because of his remarriage, noting that "he must have entered into the second marriage conscious of his obligations to his former wife." O'Brien could not have been conscious of the consequences of her remarriage where the harsh effect on her of those consequences arose only after she had made her decision to remarry.

[18]We have said that we generally defer to the sound discretion of the probate judge in determining whether modification of an alimony judgment is appropriate, *Keller I, supra* at 828, citing *Bush* v. *Bush*, 402 Mass. 406, 411 (1988), and we remanded that matter to the Probate Court to apply our new rule to this case. The probate judge did so, and concluded that restitution was

taking into consideration the limited financial resources that her new husband could contribute to her support, O'Brien was incapable of supporting herself, and had suffered a decline in her standard of living since her divorce. The judge also found that O'Brien had only those assets that she had received upon her divorce, assets that consist primarily of the equity in the former marital home and O'Brien's share of Keller's retirement paid to her at the time of the divorce. Keller's assets, in contrast, had increased significantly since the divorce, see note 3, *supra*.[19] A judgment against O'Brien, wholly unexpected, requiring her to make a substantial payment to her former husband would, in all likelihood, have a devastating financial impact on her, particularly where the judge below found that she was dependent on alimony payments for support of her reasonable everyday needs. Keller, on the other hand, took no steps to stay the judgment ordering him to make alimony payments or otherwise to place O'Brien on notice that this source of income was at risk. He waited, for no explicable reason, for three years before he acted. We conclude on this record that injustice will be avoided by a holding of nonretroactivity.

Finally, we are not aware of any decision where a court in another jurisdiction has awarded restitution in the circumstances of this case. We have already noted those cases where restitution was awarded because the alimony-recipient spouse engaged in fraud. (See note 11, *supra*, and accompanying text). In a few other reported decisions restitution of alimony payments made after remarriage has been awarded where the parties had an enforceable agreement that provided for the termination of alimony after remarriage and there was no basis for the recipient spouse to expect that she could retain the payments.[20] There was no such agreement here between Keller and O'Brien. In

not warranted. Where, as here, the equities must be weighed between Keller's claim for restitution, and O'Brien's reasonable reliance on our rules at the time she decided to remarry, it is appropriate that we again pay deference to the decision of the probate judge, who was in the best position to determine where those equities lay. *Keller I, supra.*

[19]The judge in the divorce proceeding had concluded that there was "great disparity in the ability of the parties to earn income *and acquire assets* [and that] this disparity was created over some twenty-six years of marriage" (emphasis added). His findings were incorporated by the judge who heard the complaint for modification and who considered Keller's claim for restitution, and are not clearly erroneous.

[20]See *Dodd* v. *Dodd*, 210 Kan. 50 (1972) (parties had agreed that alimony would terminate on remarriage and husband entitled to restitution for alimony

other cases, where a statute has provided that alimony terminates upon remarriage, courts have entertained efforts by the alimony-paying spouse to abate the alimony payments retroactively to the date of remarriage. Keller for example, relies on several decisions from Alabama. But Alabama law provides for the termination of alimony upon remarriage or cohabitation, see Ala. Code § 30-2-55 (1989), and decisions by that State's courts on which he relies merely enforce that statute. See *Russell* v. *Russell*, 586 So. 2d 12 (Ala. Civ. App. 1991); *Musgrove* v. *Hawkins*, 513 So. 2d 4 (Ala. Civ. App. 1988); *Lowe* v. *Lowe*, 495 So. 2d 1123 (Ala. Civ. App. 1987).[21]

We do not attempt to discern a uniform rule from the myriad decisions of courts in all fifty jurisdictions that have grappled with these issues. We observed earlier that in many States the issues are resolved in whole or part by legislation, guidance we do not have. But we are confident that the result we reach today is consistent with our own jurisprudence, as well as with the equities of the parties.

In the future recipient spouses will have the benefit of our

---

paid subsequent to wife's remarriage); *Matter of the Marriage of Edwards*, 73 Or. App. 272 (1985) (parties had agreed that alimony would terminate on remarriage and court awarded restitution, but only from date that divorce decree was modified). But see *Schneider* v. *Schneider*, 204 Misc. 918, 919 (N.Y. Sup. Ct. 1953), where the New York Supreme Court refused to allow the husband to recover alimony paid between the date of his former wife's remarriage and the date on which a Missouri court (the parties had become residents of Missouri) relieved him from future payments, even though the parties' separation agreement had provided for the termination of alimony on her remarriage but the divorce decree provided that she was to receive alimony "until further order of the Court." The court observed that "[p]ayment of alimony is not like payment of an ordinary debt." *Id.* at 920.

[21]There have been other occasions when courts have considered whether to abate or terminate alimony payments retroactively and it was clear from existing judicial rule in the relevant State that alimony would terminate on remarriage. Keller's reliance on those cases is also misplaced. See *Kuert* v. *Kuert*, 60 N.M. 432, 438 (1956) (while decision to terminate alimony was not automatic, earlier judicial holding had accepted that continuation of alimony after remarriage was "extremely rare and exceptional"); *Steffens* v. *Peterson*, 503 N.W.2d 254, 258-259 (S.D. 1993) (parties divorced and wife remarried after judicial rule announced that remarriage terminated alimony absent "extraordinary circumstances" and court could order wife to reimburse husband for payments made after his application to modify divorce decree). Even under those circumstances, whether to abate alimony payments as of the date of remarriage "rests in the sound discretion of the trial court," *Kuert, supra* at 439, and abatement was allowed only where there were no facts to justify continuation of husband's support subsequent to remarriage.

decision in *Keller I*, and will be on notice that in the event of remarriage they will be required to demonstrate proof of extraordinary circumstances to justify the continuation of alimony. They are now in a position to decide whether to remarry knowing that, except in rare instances, they will face the loss of alimony income. In *Keller I* we concluded that a payor spouse will not be relieved automatically of his or her duty to pay alimony in the event of remarriage by the recipient spouse, but must seek a modification of the divorce judgment. If a complaint for modification is brought and a probate judge refuses to terminate the alimony obligation, the decision may be appealed. Absent a request for, and the allowance of, a stay of that judgment, the payor spouse must continue to pay alimony pending the appellate court's decision. But if it is later determined that the probate judge erred, the payments will not operate as a waiver of any timely claim for a refund of the alimony, and restitution may be ordered dating from the judgment of the Probate Court. Our rule is now clear, and we do not anticipate that any hardship will be imposed by restitution in those circumstances. Where hardship is claimed, perhaps by reason of some intervening, unanticipated event during the appellate process, probate judges are in the best position to resolve those claims.

The judgment of the Probate Court and Family Court is affirmed.

*So ordered.*


LYNCH, J. (dissenting). In *Keller* v. *O'Brien*, 420 Mass. 820 (1995) (*Keller I*), we held that a recipient spouse's remarriage makes a prima facie case requiring the court to end alimony absent proof of some extraordinary circumstances established by the recipient warranting its continuation. In so holding, the court recognized that, absent such extraordinary circumstances, it is illogical and unreasonable that a spouse should receive support from a current spouse and a former spouse at the same time. See *Keller I*, *supra* at 828, and cases cited. This holding was in accord with the decision in *Southworth* v. *Treadwell*, 168 Mass. 511, 513 (1897), where, one hundred years ago, this court held that remarriage is prima facie evidence of a material change of circumstances which would warrant termination of alimony

absent proof that support by a new spouse was not adequate to meet all of the recipient spouse's needs. See *Keller I, supra* at 823 (discussing holding in *Southworth* v. *Treadwell, supra*); *O'Brien* v. *O'Brien*, 416 Mass. 477, 481 (1993) ("when a successor spouse is financially able to support the former recipient spouse, the former payor spouse is not obliged to contribute support payments"). Furthermore, the conclusion in *Keller I* was consistent with the long-standing principle in the Commonwealth that it is inequitable to allow a spouse to receive support from two individuals. *Glazer* v. *Silverman*, 354 Mass. 177, 180 (1968). See *Bushnell* v. *Bushnell*, 393 Mass. 462, 467 (1984) ("duty of support arises out of the existence of a valid marriage").

Clearly, then, the conclusion in *Keller I* cannot fairly be said to have been a decision that was not previously foreshadowed. Thus, the "novelty" of the decision is not a factor that would make it unjust or inequitable for the defendant to return the money paid to her under the erroneous judgment. Restatement of Restitution § 74 (1937) provides: "A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside."[1]

There appears to be no dispute that, at the time of their divorce, there was a fair and equitable division of the marital property between the parties. I, therefore, am at a loss to see how the plaintiff is not entitled to restitution of those alimony payments he made under a judgment based on an erroneous interpretation of the law which created a result that we have declared to be inequitable, illogical, and unreasonable. I respectfully dissent.

---

[1]Comment c to the Restatement of Restitution § 74 at 305 (1937) provides that restitution may be inequitable if restitution would involve substantial hardship. Where there are no extraordinary circumstances requiring the continued payment of alimony and there does not appear to be a dispute over whether the defendant received a fair settlement at the time of the divorce, I do not believe that the court is entitled to conclude that the repayment of the alimony would create a financial hardship.