Sanders, Janet L., J.
The plaintiff, Lexington Insurance Company (Lexington), has brought this insurance coverage action against its insured, the defendant CareCore National, LLC (CareCore) seeking a declaration of its rights and legal obligations. In April this year, this Court allowed Lexington’s motion to file a Second Amended Complaint that added Count V, an equitable claim of “Restitution/Disgorgement” seeking reimbursement from CareCore of monies paid on CareCore’s behalf, primarily for defense costs, in connection with various antitrust lawsuits against it. Pursuant to Mass.R.Civ.P. 12(b)(6), CareCore now moves to dismiss Count V, arguing that it fails to state a claim upon which relief can be granted. This Court agrees and concludes that the Motion must be Allowed.
BACKGROUND
The Second Amended Complaint contains the following allegations, assumed as true for purposes of this motion.[1] CareCore provides management services to health care plans and managed care organizations, including managing networks of radiology centers used by health plan members. Lexington was its professional liabilfiy insurer from at least 2004 to 2009. In May 2005, a lawsuit was filed against CareCore in the U.S. District Court for the Southern District of New York, New York Medscan LLC et al. v. CareCore National, LLC et al., Index No. 05 CV 4653 [Medscan). The Medscan lawsuit involved antitrust claims for violations of Section 4 of the Clayton Act and Sections 1 and 2 of the Sherman Act. The plaintiffs in Medscan claimed that CareCore and its co-conspirators unlawfully boycotted them by denying them access to networks controlled by CareCore and by steering patients away from competing providers and toward CareCore radiologist-owners in order to eliminate them as competitors. CareCore tendered the Medscan lawsuit to Lexington for coverage under Lexington Managed Care Professional Liability Policy No. 107-6854, which is a *446 claims-made liability policy affording coverage for claims first made against CareCore between June 13, 2004 and June 13, 2005 (the 2004-2005 Policy).
Disputes arose between Lexington and CareCore concerning insurance coverage for the Medscan lawsuit under the 2004-2005 Policy, but those disputes were ultimately settled by Lexington’s payment to CareCore of $76,524 in defense costs in exchange for certain promises, as set forth in a Release Agreement dated May 12, 2006 (the Medscan Release Agreement). In executing that Release, both Lexington and CareC-ore acknowledged that they had the benefit of and consulted with separate legal counsel of their own selection.
A few months after the parties executed the Medscan Release Agreement, three more lawsuits were filed against CareCore. Like the Medscan case, the plaintiffs were radiology centers alleging that CareC-ore had violated antitrust laws. Those cases were:
Medical Diagnostic Imaging, PLLC et al. v. CareCore National, LLC, 2006 CV 7764 (MDI)
Alpha Imaging Consultants, PLLC et al v. CareCore National, LLC, 2006 CV 13175 [Alpha Imaging)
Park West Radiology, P.C. et al. v. CareCore National, LLC et al, 2006 CV 13516 [Park West)
CareCore tendered the MDI, Alpha Imaging, and Park West cases to Lexington for coverage under Lexington Preferred Provider Organization Managed Care Professional Liability Claims Made Policy No. 107-7792, covering claims made between June 13, 2006 and June 13, 2007 (the 2006-2007 Policy). In response, Lexington issued coverage opinion letters to CareCore advising it that Lexington would provide a defense to CareCore under the 2006-2007 Policy, but that it was reserving its rights to disclaim coverage on a number of grounds, including the grounds that the case may constitute the same “claim” as the Medscan matter. That letter did not condition payment of defense costs on any right to seek reimbursement if it were later determined that there was no duty to indemnify or defend. Thereafter, Lexington paid CareCore approximately $10 million in defense costs for the three cases, exhausting the policy limits of liability on the 2006-2007 Policy. The parties exchanged mutual releases as to “any and all actual or alleged claims, demands, rights, actions, causes of action . . . and liabilities whatsoever, of any kinds or character” that either party may have against the other, then or in the future, “arising out of, or in any way relating to” the three lawsuits (the 2009 Agreement).
In 2008, another antitrust lawsuit was filed against CareCore in the Eastern District of New York: Allen Rothpearl, M.D., P.C. et al. v. CareCore National, LLC, 2008 CV 01917 [Rothpearl). CareCore tendered that matter to Lexington for coverage under Lexington Preferred Provider Organization Managed Care Professional Liability Claims Made Policy No. 107-8210 covering claims made between June 13, 2007 and June 13, 2008 (the 2007-2008 Policy). Lexington issued a coverage opinion letter to CareCore concluding that there would be coverage for the Rothpearl matter under the E&O portion but not under the D&O portion of the 2007-2008 Policy; it reserved its right to amend or modify its position to assert other bases for denial of coverage; it did not reserve any right to seek reimbursement of defense or indemnity payments that might be made. Ultimately, Lexington paid, on CareCore’s behalf, $3.5 million in indemnity under the 2007-2008 Policy and $340,729 in defense costs incurred in connection with the Rothpearl case.[2]
In 2011, two new antitrust cases were filed against CareCore. Like the plaintiffs in Medscan and those that followed it, the plaintiffs in these new lawsuits alleged that they too had been denied entry into the physician networks that CareCore manages and that CareCore has, as a consequence, violated antitrust laws. Those cases are:
Central Radiology, P.C. d/b/a Flushing Imaging Center and Central Medical Imaging, LLC v. CareCore National, LLC et al., No. 2011 CV 6214 [Flushing Imaging)
Eastside Medical Radiology, PLLC d/b/a Carnegie Hill Radiology, d/b/a Advanced Cardiovascular Imaging v. CareCore National, LLC et al., No. 2011 CV 9494 [Eastside Medical)
Around that same time period, CareCore settled a similar claim with Comprehensive MRI of New York [Comprehensive MRI) for $1 million before suit was filed.
As of 2011, CareCore was insured by Illinois Union Insurance Company (Illinois Union), not Lexington, and so CareCore tendered these claims to Illinois Union for coverage. Illinois Union denied coverage, citing policy language which excluded not only claims that were made before the policy period but any claims that “related to” them, including claims that share a common nexus of facts. CareCore then looked to Lexington for coverage, contending that, if they are “related,” then these 2011 claims should be covered by the earlier policies issued by Lexington. This lawsuit ensued.
DISCUSSION
Count v. of the Second Amended Complaint seeks “Restitution/Disgorgement” of amounts that Lexington paid to CareCore in connection with the earlier antitrust lawsuits. Specifically, Lexington contends that, if the 2011 claims are determined to be “related” to the earlier lawsuits so as to be covered by any of the Lexington policies, then CareCore should have to reimburse Lexington for those amounts that it paid to CareCore under the misimpression that the Medscan, MDI, Alpha Imaging, Park West and Rothpearl cases were separate and unrelated claims.[3] If the claims had been aggregated under one policy, then they would *447 have been subject to a single $10 million per claim policy limit. Because Lexington already paid to Care-Core a total of approximately $14 million under various policies, then (Lexington argues), CareCore has been unjustly enriched and Lexington is entitled to at least ¿ setoff of any amount over $10 million and perhaps should recover close to the full $14 million if all later claims were determined to the “related” to Medscan.
In response and in support of its Motion to Dismiss, CareCore argues that neither New York nor Massachusetts law permits such an equitable remedy against an insurer under these circumstances.[4] It also argues that the 2009 Agreement with its release language is sufficiently broad so as to prevent Lexington from asserting this new claim. Although this second argument has considerable merit, it would be only partially dispositive as to Count V. Moreover, this Court need not address it since I agree with CareCore that there is no support in the case law for the kind of affirmative claim that Lexington asserts here.
Restitution is an equitable remedy that requires a person (or entiiy) who has been unjustly enriched at the expense of another to repay the injured party. Keller v. O’Brien, 425 Mass. 774, 778 (1997). The mere fact that an individual has benefítted from another “is not of itself sufficient to require the other to make restitution therefor.” Id. at 778, quoting Restatement of Restitution §1 comment c (1937). In determining if a parly has been unjustly enriched, courts heavily weigh considerations of equity and morality. Salamon v. Terra, 394 Mass. 857, 859 (1985). Restitution is a quasi-contractual remedy, intended to remedy some injustice. See Community Builders, Inc. v. Indian Motorcycle Assocs., Inc., 44Mass.App.Ct. 537, 560 (1998) (concluding that there was no unjust enrichment, since the plaintiffs knowingly entered into a loan agreement with an assetless corporation without any guarantees from the individual defendants). Accordingly, courts have generally allowed restitution only under circumstances involving fraud, bad faith, violation of a trust, or breach of duly.
In the context of insurance in particular, the SJC has held that such claims are generally circumscribed by the contractual relationship between the insurer and its insured. Thus, although an insurer may agree to pay the costs of defending its insured while specifically reserving its right to disclaim liability, it cannot seek reimbursements of amounts subsequently paid to indemnify its insured against liability unless there was a specific agreement between them at or before the time payment was made, that the insured may thereafter have to pay back that amount. See e.g. Metropolitan Life Insurance Company v. Cotter, 464 Mass. 623, 641-42 (2013) (insurer not entitled to recover amounts paid to its insured even though it was later determined that the insured did not qualify for benefits); see also Medical Malpractice Joint Underwriting Ass’n of Massachusetts v. Goldberg, 425 Mass. 46, 56-57 (1997) (insurer may later seek reimbursement for amounts paid to settle the underlying action against its insured only if the policy itself contains a provision permitting the insurer to seek reimbursement or there is some other express agreement with the insured that he may be required to repay amounts received). A unilateral reservation of rights is not enough. Of course, if the insured procures coverage as a consequence of an intentional misrepresentation tantamount to fraud, then the insurer will be able to recover any amounts paid in reliance on that intentional misrepresentation. See e.g. Espedito Realty, LLC v. National Fire Insurance Co., of Hartford, 935 F.Sup.2d 319 (D.Mass. 2013) (applying Massachusetts law, court held that insurer entitled to recover amount paid to insured for loss of business income where insured fraudulently claimed his tenant had stopped paying rent due to a water break). None of these circumstances are alleged in the Second Amended Complaint.
Lexington seems to imply that CareCore did engage in misconduct by representing to Lexington when it submitted claims for the earlier lawsuits that these claims were separate. It notes in its memorandum that CareCore was, from 2004 to 2010, the subject of an ongoing investigation by the New York Attorney General’s Office (the OAG) regarding a single ongoing course of conduct whereby CareCore was refusing to contract with qualified physicians for one or more of the health networks that it managed. Lexington cites a document issued by the OAG on December 20, 2010. But this document (which is not referenced in the Second Amended Complaint) says nothing about CareCore’s state of mind between 2005 and 2008 when it tendered for coverage to Lexington the five antitrust claims against it asserted during that time period. Moreover, Lexington was clearly aware of the issues of “relatedness” at the time since that issue was specifically flagged in its the reservation of rights letter it issued back in 2006 following CareCore’s notice to Lexington of the MDI, Alpha Imaging and Park West lawsuits. Although that same letter stated that Lexington reserved its right to change its position in defending the lawsuits “as additional facts and legal theories are developed during the course of the litigation,” the Second Amended Complaint does not allege that any such facts or theories surfaced in that litigation before it agreed to pay the $10 million in policy limits to cover defense costs in those three cases.
Indeed, much of what Count v. seeks to recover is not for indemnity against liability but for defense costs, and it is well established that the duty to defend is much broader than the duty to indemnify. That duty arises at the outset of litigation against the insured, and is triggered as long as the underlying complaint alleges actions that are potentially covered by the policy, no matter how thin those allegations are. Thus, *448 it is irrelevant whether it is later determined that Lexington did not have an indemnity obligation for those earlier claims, since the duty to defend — and to pay associated defense costs — is determined at the time the claim is asserted. Although some jurisdictions outside bf Massachusetts have concluded that an insurer may recoup those costs, they have so held only where the insurer in made it clear to the insured, either in the policy itself or in its reservation of rights, that it retains the right to seek reimbursement of those costs if a court later determines there was no duty to defend. None of the letters that Lexington sent to CareCore suggested even by implication that it was only advancing the costs subject to seeking recoupment from CareCore later. Moreover, this Court has considerable doubt that the SJC would recognize as enforceable even an express reservation of rights regarding defense costs, given its holding in Cotter with respect to indemnification. See Perdue Farms, Inc. v. Travelers Cas. & Surety Co. of America, 448 F.3d 252, 257 (D.Md. 2006), cited in Cotter, 464 Mass. at 642, n.21 (explaining that any recognition of an insurer’s right to be reimbursed for defense costs would serve only as a “backdoor narrowing of the duty to defend” and “significantly tip the scales in favor of the insurer”).
In short, this Court sees nothing “unjust” in CareCore’s retention of amounts already paid by Lexington. The payments were the result of negotiations between two sophisticated parties, who were represented by separate counsel of their own choosing and who reasonably expected to resolve their obligations through these payments. Lexington had the capacity to investigate before paying and had available to it all the information that it needed to make a decision. Lexington alleges no facts in its Second Amended Complaint to suggest that CareCore obtained these past payments from Lexington, primarily for defense costs, as a result of fraud or in bad faith. Significantly, it cannot point to a single case even remotely similar to the one before this Court to support the right to recovery advanced by CountV. It is not enough simply to argue (as Lexington’s counsel did at the motion hearing) that it would be “unfair” if CareCore is allowed to keep the payments for past claims at the same time that it asserts a different theory to support coverage from Lexington on the 2011 claims: there must be some legal support for the claim. Having failed to state a claim which upon relief can be granted, Count v. must be dismissed.
CONCLUSION AND ORDER
For all of the foregoing reasons, CareCore National, LLC’s Motion to Dismiss Count v. of Lexington Insurance Company’s Second Amended Complaint is ALLOWED and that Count is hereby DISMISSED.

This Court has also considered documents that are referenced by the Second Amended Complaint. Those documents are attached to CareCore’s Memorandum in support of its Motion.

The parties continue to dispute whether Lexington is obliged to pay additional defense costs. That dispute is currently in arbitration.

Count v. also alludes to a claim asserted by Standup MRI filed in 2008. Although CareCore tendered that claim to Lexington, Lexington denied coverage.

Lexington has previously argued in this litigation that New York law applies to the interpretation of its policies, since the underlying claims involve CareCore’s activities in New York. In its Motion to file the Second Amended Complaint, it relied on Massachusetts law. This Court need not decide which law applies to the instant motion, since there is no difference between New York and Massachusetts as to the issues raised here.