NORMA S. HERON vs. DAWSON C. HERON.

Middlesex. November 2, 1998. - December 21, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, MARSHALL, & IRELAND, JJ.

*Constitutional Law,* Divorce, Full faith and credit. *Divorce and Separation,*
Foreign divorce, Modification of judgment, Alimony, Division of property.
*Res Judicata.*

A divorce decree entered by a Nevada court in 1978 was entitled to full faith
and credit [538-539], and in circumstances in which, by statute, a Nevada
court would not have had authority to modify the alimony award, a Probate
and Family Court judge could not modify alimony [539-540]; further,
where the Nevada judgment was res judicata in Nevada as to the division
of marital property, res judicata barred a claim for division of marital as-
sets in the Probate and Family Court [540-542].

COMPLAINT for a modification of a judgment of divorce filed in
the Middlesex Division of the Probate and Family Court Depart-
ment on December 4, 1991.

The case was heard by *William Highgas, Jr.,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Miriam Goldstein Altman* for Dawson C. Heron.

*Colette Manoil* for Norma S. Heron.

IRELAND, J. This case involves an attempt in Massachusetts to
modify a divorce decree entered by a Nevada court in 1978. We
conclude that this decree is entitled to full faith and credit and,
therefore, Massachusetts courts may not alter the alimony award
or property disposition in the Nevada decree.

The plaintiff filed a complaint in the Probate and Family
Court on December 4, 1991, seeking a modification of the
Nevada alimony award and a division of marital assets under
G. L. c. 208, § 34. A trial was scheduled during 1994. The
judge suspended the trial before it commenced in order to
answer preliminary issues. On November 5, 1995, the judge is-
sued a memorandum of decision in which he ruled that the

Nevada decree was entitled to full faith and credit, that G. L. c. 208, § 34, permits the Probate Court to make an equitable division of marital assets, and that the court could modify the Nevada decree. On December 7, 1995, the judge granted the plaintiff temporary alimony of $5,000 to be paid by the end of 1995 and $800 per month thereafter.

Following trial in August, 1996, the judge's posttrial order adopted the temporary alimony award[1] and awarded $53,000 to the plaintiff for attorney's fees, but it did not divide any marital assets. Both parties appealed, and we granted the defendant's application for direct appellate review. We vacate the judgment of the Probate and Family Court.

The plaintiff and the defendant first married on February 8, 1962. They had two children. They were divorced on June 13, 1972. They married again in Massachusetts on September 13, 1976. Less than two years later, on September 1, 1978, this marriage ended when a Nevada court granted the husband a divorce.[2]

The Nevada divorce decree provided that the plaintiff would receive alimony of $300 per month for five years, or until her death. Custody of the children was given to the defendant, and no child support was ordered. As to the marital property, the court held that "there is no community property of the parties hereto in the State of Nevada to be adjudicated by this court."

The defendant returned to Massachusetts soon after the divorce. Despite the Nevada decree, the parties shared custody of the children, who soon resided exclusively with the plaintiff. Beginning in January, 1989, the defendant voluntarily paid the plaintiff $800 per month for child support. The plaintiff started this action when the defendant stopped making these payments in March, 1991.

1. *Full faith and credit.* Article 4, § 1, of the United States Constitution provides, in part, that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." Full faith and credit requires that we give to the judgment of the Nevada court the same

---

[1]Alimony was ordered paid until the earliest of the plaintiff's remarriage, the plaintiff's death, or the death of the defendant, in which case the plaintiff would receive alimony for at least ten years after the date of the order.

[2]The Nevada court had personal jurisdiction over both parties. The court found that the defendant was domiciled in Nevada, and the plaintiff answered the defendant's complaint and appeared in Nevada through her attorney.

finality that it would receive in Nevada. See *Sherrer* v. *Sherrer*, 334 U.S. 343, 354 (1948); *Cavanagh* v. *Cavanagh*, 396 Mass. 836, 839 (1986), and cases cited. Divorce decrees are not an exception to full faith and credit. See *Sistare* v. *Sistare*, 218 U.S. 1 (1910); *DeGategno* v. *DeGategno*, 336 Mass. 426 (1957) (respecting Nevada divorce decree in which both parties appeared).

The plaintiff contends that, under G. L. c. 208, §§ 34, 37, a Massachusetts court may modify alimony and make an equitable division of assets where there is personal jurisdiction over the parties, even if a foreign State court granted the divorce judgment. The plaintiff errs because the statutes must yield to the full faith and credit clause, which commands us to respect the Nevada court judgment. See *Cavanagh, supra.*

2. *Modification of alimony.* In order to satisfy full faith and credit, the effect of the Nevada decree must be determined by Nevada law. A Nevada court interpreting Nevada law would not permit modification of the decree. See *Siragusa* v. *Siragusa*, 108 Nev. 987, 991-992 (1992); *Day* v. *Day*, 82 Nev. 317, 320-321 (1966). See also *Cavell* v. *Cavell*, 90 Nev. 334, 336 (1974) (discussing legislative and judicial history of modification issue in Nevada). The 1978 decree is a final adjudication on the plaintiff's right to alimony and, therefore, we may not modify it.

When the parties were divorced in 1978, Nevada law provided:

> "If a decree of divorce, or an agreement between the parties which was ratified, adopted or approved in a decree of divorce, provides for specific periodic payments of alimony, such decree or agreement is not subject to modification by the court as to accrued payments."

Nev. Rev. Stat. § 125.150(6) (1975). Payments accrue after all necessary payments have been made and the period of alimony has lapsed. See *Siragusa, supra* at 992; *Schryver* v. *Schryver*, 108 Nev. 190, 191 (1992). Here, a Nevada court would not permit modification of the alimony award because accrual occurred in September, 1983, more than eight years before the plaintiff filed her complaint, when the defendant satisfied the Nevada decree and the payment period expired.

Differences between Nevada and Massachusetts policy do not

affect our analysis. Nevada law rejects modification, except as to unaccrued payments. According to one explanation, Nevada courts "cannot modify that which no longer exists." *Siragusa, supra* at 992. In the Commonwealth, by contrast, alimony is modifiable. See G. L. c. 208, § 37. We may not, however, "weigh the relative merits of the policies" of different States. *Sherrer, supra* at 354. "If in its application local policy must at times be required to give way, such 'is part of the price of our federal system.' " *Id.* at 355, quoting *Williams* v. *North Carolina*, 317 U.S. 287, 302 (1942).

3. *Division of property.* The plaintiff seeks a division of the marital assets that existed in 1978. She asserts that the property was not addressed under the 1978 decree, and, therefore, there is no judgment that would demand respect under full faith and credit. She notes that the Nevada decree mentions that "there is no community property of the parties hereto in the State of Nevada to be adjudicated by this court." We disagree, and conclude that the 1978 divorce judgment is res judicata in the State of Nevada as to the division of marital property, just as it would be with any issue that was raised, or could have been raised, at that time. Thus, we must give full faith and credit to the Nevada decree by denying this attempt to divide marital assets.

Because we must give to the Nevada judgment the same finality it would receive in Nevada, Nevada's rules on res judicata govern this question. See *Durfee* v. *Duke*, 375 U.S. 106, 109 (1963); *Cavanagh, supra.* In Nevada,

> "In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"

*Bennett* v. *Fidelity & Deposit Co.*, 98 Nev. 449, 452 (1982).

Res judicata bars the plaintiff's claim. We cannot determine from the language of the 1978 divorce decree whether the Nevada court addressed the division of marital assets. The answer, however, is immaterial because the plaintiff could have contested the property division in the earlier proceeding. In Nevada, "a judgment is conclusive not only on the questions

actually contested and determined, but on all matters which might have been litigated and decided in the suit." *York* v. *York*, 99 Nev. 491, 493 (1983). The court could have affected all the marital assets. Even out-of-State real property could have been addressed indirectly through an in personam decree because the court had personal jurisdiction over the parties. See *Buaas* v. *Buaas*, 62 Nev. 232, 236 (1944) (Nevada court with personal jurisdiction over both parties may "pass indirectly upon the title to land situate in another state"). Further, the Nevada decree was a final judgment on the merits, see Nev. Rev. Stat. § 125.130(1) (1978) (judgment of divorce is a final decree), and the parties here are identical to those in the 1978 action.

Neither of Nevada's exceptions to res judicata applies here. First, under Nev. R. Civ. P. 60(b) (1997), a party may seek relief from a final judgment based on specific grounds, such as mistake, excusable neglect, fraud, or misconduct, none of which is alleged by the plaintiff. Second, an independent action in equity can be brought without regard for either the specific grounds or the time limitations in rule 60(b). See *Nevada Indus. Dev., Inc.* v. *Benedetti*, 103 Nev. 360, 364-365 (1987). This is a "limited circumstance[]." *Id.* at 365. The paramount concern for the court is "whether the equitable action violated the policies and purposes of the doctrine of res judicata." *Pickett* v. *Comanche Constr., Inc.*, 108 Nev. 422, 427 (1992). "[T]he policies furthered by granting relief from the judgment [must] outweigh the purposes of res judicata." *Nevada Indus. Dev., Inc., supra.*

This second exception has permitted a division of marital property where there had been no fair opportunity to address the property. See *Williams* v. *Waldman,* 108 Nev. 466, 473 (1992); *Amie* v. *Amie,* 106 Nev. 541, 542 (1990); *First Nat'l Bank* v. *Wolff,* 66 Nev. 51, 55 (1949). The unadjudicated property, which was held as community property during the marriage, is held by the parties as tenants in common once the decree is finalized. See *Williams, supra* at 474; *Amie, supra*; *First Nat'l Bank, supra.* The exception allows a suit in equity to partition the property. See *Amie, supra* at 543.

The plaintiff urges us to consider *Williams* v. *Waldman, supra,* a case somewhat similar to this one in which a former spouse was permitted to show that her husband's interest in a law partnership was unadjudicated in their divorce decree. *Id.* The facts in *Williams* are different from the present case in important respects. The spouse was unrepresented and relied on

advice from her attorney-husband; the property settlement agreement was authored by the husband who accordingly was charged with responsibility for ambiguities in the document; and the wife did not discover the extent of the husband's interest until seven years after the divorce. The present case differs because the plaintiff was represented in the divorce proceeding and should have known about the property. She had both an opportunity and an incentive to raise the issue in 1978.

An equitable independent action is not appropriate here. A Nevada court would not allow an exception to finality because it would defeat the State's strong policy that favors deciding divorce and property rights simultaneously. See Nev. Rev. Stat. § 125.150(1) (1997); *Smith* v. *Smith*, 100 Nev. 610, 613 n.1 (1984) (expressing strong disfavor toward bifurcated divorce proceedings). In addition, the Nevada court considered the subject of the couple's community property. It just chose not to order a division of it.

Full faith and credit requires us to honor the res judicata effect of the Nevada divorce decree, just as it would be honored in a Nevada court.[3] In sum, the plaintiff's claim is barred in Massachusetts because it would be barred if it were brought in Nevada.

4. *Attorney's fees.* Because we hold that the plaintiff is not entitled to a modified award of alimony or a division of marital assets, the award of attorney's fees is vacated.

5. *Conclusion.* The judgment of the Probate and Family Court is vacated. The case is remanded to that court for entry of an order staying the payment of alimony to the plaintiff, and for a determination, after a hearing, whether equity requires that the plaintiff make restitution of all or part of the alimony paid to her pursuant to the temporary alimony order and judgment of alimony.[4]

*So ordered.*

[3]If the Nevada court could not have addressed the couple's real property outside of Nevada, then the judgment would not be entitled to full faith and credit as to the out-of-State real property. As noted above, the Nevada court could have affected out-of-State real property. See Annot., Power of Divorce Court to Deal with Real Property Located in Another State, 34 A.L.R.3d 962, 965-966 (1970 & Supp. 1998).

[4]It is unclear from the record whether restitution would so impoverish the plaintiff as to make her a ward of the public. Cf. *Keller* v. *O'Brien*, 420 Mass. 820, 827 (1995); *O'Brien* v. *O'Brien*, 416 Mass. 477, 479-480 (1993).